## Brown, &c. vs. Alden, &c.     Pet. Equity.

### APPEAL FROM THE LOUISVILLE CHANCERY COURT.    Case 29.

1. Case stated in the petition.

2. Demurrer and decree of the chancellor.

3. The word *"heirs,"* inserted in a deed of trust conveying property to a trustee, construed to mean nothing more than a conveyance of the complete legal title.

4. A deed of trust conveying the complete legal title to the trustee, for the separate use of a married woman, without any direction as to its future transmission, or any restriction upon her interest or power over the property or estate, leaves the property at the death of the *cestui que trust,* to pass as the law directs.

5. To authorize the court to determine the words "heirs" or "heirs of the body" to mean a particular class to take as purchasers, there must be some words or circumstances showing such an intention. (See *Prescott v. Prescott's heirs,* 10 *B. Monroe,* 56; *Robb v. Belt,* 12 *B. Monroe,* 643.) Such words, of themselves, being only descriptive of the thing, and intended to show an intention to pass only the entire interest in the thing conveyed, whether real or personal, or in the use.

6. By the common law the separate property of the wife vested in the husband as her administrator or survivor, in action, whether the property was given directly to the wife or to another for her use, where there were no words to exclude him.

7. The right of the wife to a separate estate or personalty, though of modern origin, is now a well established principle of equity, and is applied in all cases where it is manifestly intended that the property is intended to be conveyed to the separate use of the wife.

8. The husband, upon the death of the wife, is entitled, as her administrator or survivor, to property held to her separate use unless he be excluded, or the wife, in the exercise of a power conferred, dispose of the property. (7 *John. Chy. Rep.,* 329; 2 *Mylne & Kean,* 57; 11 *B. Monroe,* 138; 12 *B. Monroe,* 371.)

9. Property conveyed in trust to an unmarried woman, held to be and remain separate property after marriage, and even a second marriage, but a surviving husband's right in the property, though suspended during the coverture, will attach unless he be excluded by the terms of the conveyance, or the property disposed of by the wife, under a power to do so.

10. "A separate estate in the wife, however absolute, does not exclude the rights of the surviving husband, but if, by the conveyance, an interest is given to the wife, which may endure beyond her death, the rights of the surviving husband attach to such interest just as if there had been no separate estate, unless it has been disposed of by the wife, or by the conveyance which created the separate estate; when the wife dies the cause for excluding the husband ceases.

11. Since the act of 1846, a surviving husband is only entitled to a life estate in the slaves of the wife, and that whether there be issue of the marriage or not.

Judge MARSHALL delivered the opinion of the court.     July 8.

Brown, &c.
vs.
Alden, &c.
1. Case stated in the petition.

This is a petition in equity filed by the heirs of Mrs. Abigail W. Alden, deceased, against Jos. Alden, her surviving husband, and Henry L. Pope, trustee, claiming to be entitled, as her heirs and next of kin, to certain estate in the hands of the trustee, as the separate estate of the said Abigail. The estate consists of a male slave, and certain household and kitchen furniture, and money or notes for money. The trust was created in the following manner: By a deed bearing date the 6th of November, 1849, and executed by Alden and wife, conveying a tract of land the property of the wife, it is recited, that "whereas the undersigned, Abigail W. Alden, is the owner, in fee simple, of the following described tract, and has consented to the sale and conveyance of the same, provided all the purchase money excepting the sum of $1,681 25, (which she agrees shall be paid to her husband, Joseph Alden,) shall be made payable to Henry L. Pope, trustee, for her sole use and benefit." And the deed proceeds, in consideration of the aforesaid sum paid in cash to the husband, and of notes for about $5,000 assigned or payable to the trustee, to convey the land in fee simple to the purchaser. On the 19th of November, 1849, Joseph Alden and Pope, the trustee, executed a writing which states the desire of Mrs. Alden that the slave and furniture above referred to shall be purchased from her husband with the trust funds, and fixing the terms of payment, provides that the price shall be ascertained by two valuers, and that on payment being made, the slave and furniture shall be conveyed to Pope, as trustee, as aforesaid, and on the 22d of November, 1849, he conveyed the same by deed to the said Pope, "to be by him held, owned, and enjoyed in strict trust for the sole, use and benefit of Abigail W. Alden, her heirs, &c., forever.

2. Demurrer and decree of the chancellor.

The petition, after referring to these instruments as being filed with it, states that Abigail W. Alden died childless, leaving the plaintiffs, a brother, three sisters, and the children of a deceased sister, her only heirs; that Joseph Alden has, without their consent, obtain-

ed administration of her estate, and that he is in possession of the slave and the furniture, and is endeavoring to obtain possession of the trust funds in the hands of the trustee; that the debts of the deceased have all been paid, and that the trustee is doubtful to whom he shall account, &c.    A demurrer to the petition was sustained, and the petition dismissed with costs, and the plaintiffs have appealed to this court.

No question is, or as we suppose can be, made as to the sufficiency of the instruments above set forth, to create a trust for the sole and separate use of Mrs. Alden, nor do we conceive that there is any ground for discriminating between the first and the last instruments as to the nature or extent of the trusts created by them.    The title of the trustee, and the interest of the *cestui que trust* in the purchase money secured according to the first deed, are precisely the same as the title and interest in the slave and furniture, as conferred by the express term of the last deed. The trust includes the entire interest, or, as it has been called, the entirety, of the property, money, slave, and furniture, and subjects the entirety of each to the sole and separate use of the wife.    No words of succession or inheritance are necessary to pass the entirety in either of these species of property, and therefore the words "her heirs," inserted in the last deed, if taken to be words of limitation describing the interest of the *cestui que trust*, give no greater extent or duration to that interest than it would have if those words were omitted.    There are no words of inheritance in the grant to the trustee, and yet the legal estate was undoubtedly intended to be granted to him to the full extent of the trust engrafted upon it.

There is no question that these deeds create and secure an interest in the wife, which the court of equity regards and upholds as her separate estate, to be appropriated and disposed of as she may choose, unless the deed itself directs its disposition, or controls her power over it.    If the deed directs the course in which the estate or any part of it is to pass upon her death,

BROWN, &c.
vs.
ALDEN, &c.

3. The word *"heirs,"* inserted in a deed of trust conveying property to a trustee, construed to mean nothing more than a conveyance of the complete legal title.

4. A deed of trust conveying the complete legal title to the trustee, for the separate use of a married woman, without any direction as to its future

BROWN, &c.
vs.
ALDEN, &c.
_____

transmission, or
any restriction
upon her inter-
est or power
over the prop-
erty or estate,
leaves the prop-
erty, at the
death of the
cestui que trust,
to pass as the
law directs.

5. To author-
ize the court to
determine the
words "heirs"
or "heirs of the
body" to mean
a particular
class to take
as purchasers,
there must be
some words or
circumstances
showing such
an intention.
(See Prescott v.
Prescott's heirs,
10 B. Monroe,
56; Robb v. Belt,
12 B. Monroe,
643.) Such
words, of them-
selves, being
only descriptive
of the thing,
and intended to
show an inten-
tion to pass on-
ly the entire in-
terest in the
thing conveyed,
whether real or
personal, or in
the use.


6. By the
common law,
the separate
property of the
wife vested in,
the husband as
her administra-
tor or survivor,
in action,
whether the
property was

her power and interest, and what may be denominated her separate estate, are so far limited and restricted. If the property be conveyed in trust for her separate use, without any direction as to its future transmission, and without restriction upon her interest or power, then the entire use in the entire thing or property which is the subject of the trust, is vested in her as her separate estate.

It has been suggested, in argument, that the words "her heirs, &c.," used in expressing the trust in the conveyance of the slave and furniture, should be taken as words of purchase, and as indicating the next of kin of the wife who, in reference to the personalty, stand in the place of heirs. But although there are cases in which the term "heirs," or "heirs of the body," has been construed as a designation of particular persons to take as purchasers, there is in all of these cases some other word or circumstance in the conveyance which has been held to require, or at least to authorize, such an interpretation as in the case of *Prescott v. Prescott's heirs*, 10 B. Monroe, 56, and *Robb v. Belt*, 12 B. Monroe, 643. But we have neither found nor been referred to any case in which a conveyance, either of the thing itself or of the use, " to A. and his or her heirs, &c.," has been held to vest any interest in the heirs or next of kin as purchasers. The effect of such words standing alone, is to vest in the person named, the entire interest in the thing, whether real or personal, or in the use, the word "heirs, &c.," being descriptive of the interest granted to that person, and not as a designation of the particular persons who are to take upon his or her death.

There is nothing in any of these instruments to restrict the interest of Mrs. Alden to less than the entirety of the use covering the entirety of the money, slave, and furniture, conveyed to her use, and there is nothing in any of them to indicate that the parties intended thereby to control or direct the devolution of the property after the death of the wife, if she should fail to dispose of it by will or otherwise during her

life. It was therefore left, upon her death, to the disposition of the law; and the question is whether, upon the death of a wife having such an absolute separate estate in personalty, it passes by law to her kindred, or to her husband in the character either of husband or of administrator. According to the principles of the common law, the more fixed and absolute was the title of the wife in personal property, the more certainly did the title vest in the husband during coverture if the thing was in possession, and upon the death of the wife as her administrator or as survivor, if it was in action, whether his title as administrator be properly referable to the common law, or to an ancient statute, is not material, it existed by the general marital law, and it attached whether the property were given directly to the wife, or to another for her use, without exclusive words.

*given directly to the wife or to another for her use, where there were no words to exclude him.*

The doctrine that a wife could, during coverture, have a separate estate in personalty, in which the husband should have no interest or control, is utterly inconsistent with the principles of the common law, which regarded the existence of the wife as being for most legal purposes, and particularly with respect to personal property in possession, merged in that of the husband. The idea of a separate estate in the wife, free from the control and disposition of the husband, subject exclusively to the will and dominion of the wife, and thus exempted from the operation of the general marital law, is the creature of modern equity, adopted at first with hesitation and diffidence, and only where there was an express exclusion of the rights of the husband, but which, by successive adjudications, has become an established principle in equity, applicable to every case in which it is sufficiently manifest that the property is intended to be conveyed for the exclusive use of the wife.

*7. The right of the wife to a separate estate in personalty, though of modern origin, is now a well established principle of equity, and is applied in all cases where it is manifestly intended that the property is intended to be conveyed to the separate use of the wife.*

By the common law, as already stated, such interest as the wife has in personal property in possession, vests absolutely in the husband, and it is only when the donor or grantor of such property manifests an in-

tention to secure to the wife a benefit of which this marital law would deprive her, that the court of equity can be justified under its power of enforcing trusts, in holding such property exempt from the operation of that law. But this principle, which alone justifies the exclusion of the marital rights of the husband, authorizes such exclusion only so far as the principle itself extends—that is, only so far as there is a manifest intention to exclude them; and although the intention to exclude them during the coverture, or during the life of the wife, be manifested, yet if there be no manifestation of an intention to exclude them after her death, they will attach upon her death, during the life of the husband, and may be considered as potentially existing during the coverture, to take effect only upon the contingency of its termination by the death of the wife, and with respect only to so much of the property as may then remain undisposed of under the power incident to her separate estate. The potential existence of such contingent right during the coverture is not in any degree inconsistent with the absolute right of use, consumption, or other disposition of the property by the wife, and therefore is not repelled by the manifest intention to secure such absolute right, or by any principle essential to its support.

8. The husband, upon the death of the wife, is entitled, as her administrator or survivor, to property held to her separate use unless he be excluded, or the wife, in the exercise of a power conferred, dispose of the property. (7 *John. Chy. Rep.* 229; 2 *Mylne & Keane*, 57; 11 *B. Monroe*, 138; 12 *B. Monroe*, 371.)

The case of *Stewart v. Stewart*, 7 *John. Chy. Rep.*, 229, and other cases of like import, prove that it is not essential to the existence of the husband's right upon the death of his wife to take her property as survivor or as administrator, that he should have had any present right or interest in it as husband during the coverture, and that although during the life of his wife his marital rights as to the particular property are repelled or suspended by the settlement, yet when it is left at her death not disposed of either by the settlement or under her power, "the surviving husband must of course take it, and with as good a right and title in law, as the heir takes the undevised estate of the ancestor." In the case just cited, a widow had,

in contemplation of marriage, conveyed her estate real and personal, " in trust for her future use, free from the control of her intended husband," or any other husband, reserving a power of appointment. Her husband, therefore, had no vested right or interest in it during the coverture, but chancellor Kent said: "The court cannot take away the right of the husband to the personal estate of his wife, when it is not taken away by the settlement or by the power of appointment under it," that in such case "the right of the husband, as survivor, is a fixed and stable right, over which the court has no control, and of which he cannot be divested; that the settlement cannot be extended by construction beyond the just and fair import of its provisions, and clearly the court cannot create a settlement, or a disposition of property, in violation of the *jus mariti*, when none has been made by the party.

In the case of *Proudley v. Fielder*, 2 *Mylne & Keen*, 57, it was stipulated in marriage articles that money in the funds, the property of the intended wife, should be for her sole and separate use, to all intents and purposes as if she were sole and unmarried; the marriage took place, but no settlement was made; the wife died without issue, and without having made any appointment in the life time of the husband, who took out administration on her estate; on his death the next of kin of the wife claimed the fund from his executor, and the master of the rolls said the expression "for her sole and separate use, as if she were sole and unmarried," had no reference to the devolution of the property after her death; that she was to retain the same absolute enjoyment and power of disposition over the moneys, as if she was sole and unmarried, but there was not one word to vest the property after her death in her next of kin, or to defeat the right which her surviving husband is entitled to acquire as her administrator.

In the previous case of *Guttridge v. Stillwell*, 1 *Mylne & Keen*, 133, where there was a fund in court standing to the separate account of a married woman,

Brown, &c.
      vs.
Alden, &c.,

whose husband survived her, and died before administering on her estate, the master of the rolls refused the application of the son to have the fund, because, although he had taken administration of his mother's estate, he had not administered also on the estate of his father; and although the Lord Chancellor Brougham reversed this refusal, on the ground that the court could not look beyond the admitted legal personal representative; it is said that in *Loy v. Ducketts*, 1 *C. & R.*, 312, Lord Cottonham approved of the opinion of the master of the roll.    But it is to be observed, that while the opinion of the master of the rolls evidently implies that the husband's administrator was the party entitled, the opinion of Lord Brougham implies no negation of the husband's right, and is entirely consistent with the doctrine which prevailed in the English courts, that the administrator of the wife will be regarded as a trustee for the representatives of the husband, if he die before he has administered.    See *Stewart v. Stewart*, 7 *John. Chy. Rep.*, 244, and authorities there cited.

To these cases others might be added from the English Chancery, recognizing the right of the husband to succeed to the wife's separate estate upon her death, where there is no other disposition of it either by her or by the settlement, as in *Fittiplace v. Gorges*, 1 *Vesey*, 48, in which there was no such disposition, and *Bailey v. Wright*, 18 *Vesey, jr.*, 49, in which there was a limitation in the settlement, in default of appointment by the wife, "in trust for her next of kin, or personal representatives," without which limitation, it was said by Chancellor Kent in *Stewart v. Stewart*, 7 *John. Chy. Rep.*, 246, "it would never have been made a question whether the property did not devolve upon the husband by due course of law.

We pass however to two cases in this court in which the same doctrine, in effect, is asserted and applied. The first of these, *Payne v. Payne, &c.*, 11 *B. Monroe*, 138, was not noticed in the argument of this case.    There a testatrix had devised land, slaves, and personalty to

BROWN, &c.
*vs.*
ALDEN, &c.

trustees for the separate and exclusive use of her daughter, S. E. Payne, to be disposed of as she might deem proper, directing that after the death of R. Payne, the husband of her daughter, the trust should cease and determine, and legal title to all the property devised vest absolutely in her daughter. The devisee died leaving three children of the marriage and her husband surviving, and upon a bill filed by one of these children against the husband, the court decided: 1st. That Mrs. Payne had the fee in the whole estate, to which, as it was to be her separate estate during the life of her husband, her title during that period was equitable only. 2d. That the surviving husband was entitled to be tenant by the courtesy in the land, though the estate was held in trust during the life of the wife. 3d. That if the death of the wife terminated the trust, the surviving husband was entitled to the personalty as her administrator, and if the trust still continued during his life, then, as administrator, he was entitled to the profits and beneficial use of the slaves and personalty. The court observed that the will contemplated and provided for the death of the husband before that of the wife, and did not provide for the event which had happened, of the wife's death occurring first. But although by the terms of the will, the separate estate was to continue during the life of the husband, it was regarded by the court as terminating at the death of the wife, since at that moment the rights of the husband, in their full vigor, were recognized as attaching to the property then undisposed of by the wife; and this, as we conceive, accords with the true meaning and necessary limit of the term "separate estate," as used in reference to the rights of husband and wife. It would be a useless term in describing the interest of one who is *sui juris*, and is in fact only applied to that peculiar interest or estate which, under the doctrines of equity, a wife is allowed to hold with its incidental rights and powers in opposition to the marital rights of the husband, in her general property or under the general law, *ex viter-*

Brown, &c.
*vs.*
Alden, &c.

*mini*, it is the estate of a married woman, and its name and peculiar properties necessarily terminate when she ceases to be a *feme covert*, whether it be by her own death or by that of her husband, though in the latter case they may be again revived by a subsequent marriage.

This is illustrated by supposing what often happens, that property is devised or conveyed in trust for the sole and separate use of an unmarried woman, without reference to any contemplated marriage. It was at first decided, in such a case, that as the *feme* had the absolute power of disposition, and her subsequent marriage was by law a gift of her personal property to her husband, her interest was destroyed by the marriage; but this idea, so obviously inconsistent with the intention of the conveyance, was soon abandoned, and the doctrine is well settled, that in such case the property is the separate estate of the *feme* upon her marriage; that if she survive it is still hers, but without any peculiar feature of a separate estate, and that if she marries again, it becomes again her separate estate, which is plainly to be understood as an estate held by the wife in exclusion of the husbands rights during coverture; and as there is no separate estate except during the coverture, a separate estate in the wife does not, *ipso facto*, exclude the rights of the husband except during the coverture, and as there are marital rights which do not come *in esse*, that is, into actual enjoyment except upon the death of the wife during the life of the husband, there is no inconsistency in saying that, upon that event, such rights exist and may be exercised with respect to that which had been the separate estate of the wife, just as if it had not been her *separate* property, nor in saying with respect to any rights which the husband would have had in the property of his wife, if there had been no separate estate, that they are only suspended during the coverture by the existence of the separate estate, and that upon her death, if he survives, they exist and re-attach as to all of her property which is then left

*9. Property conveyed in trust to an unmarried woman, held to be and remain separate property after marriage, and even a second marriage, but a surviving husband's right in the property, though suspended during the coverture, will attach unless he be excluded by the terms of the conveyance, or the property disposed of by the wife, under a power to do so.*

to the disposition of the law. Nor does this doctrine require, that in order to preserve the harmony and consistency of the law, the separate estate of the wife should, upon the termination of the coverture by the death of the husband, be taken from her and given to his representatives; for in such case, as the husband would have no present or vested right or interest in the property during his life, and as the bare possibility or potential and contingent right dependent upon his survivorship, would be extinguished by his death, there would be nothing in him which could, on any principle, be transmitted to his representatives, and that which was the separate estate of the wife at his death would continue to be her property according to the terms of the trust, because there is no other title but such as the deed creates. It would be a gratuitous and needless perversion of the intention of the conveyance, and of the very principle on which a separate estate is maintained for the benefit of the wife, to take the property from her for the benefit of the husband's representatives, in consequence of an event which, by the general law, would cut off every right of the husband or his representative, which had no existence or did not vest during his life. It was in precise conformity with these principles, and with the cases which have been cited, that in the case of *Allen v. Everett,* 12 *B. Monroe,* 371, this court having determined that under the will in question Mrs. Everett would take an absolute fee simple separate trust estate in all the property devised to her, (page 376,) went on to say that her husband who survived her "would be entitled, as tenant by the curtesy, to a life estate in the land," and would be absolutely entitled to the personal property if reduced to possession, or if held adversely it could be recovered by him as his wife's administrator and appropriated to his own use. An examination of the case will show that the nature and extent of the husband's interest was presented and regarded as material in reference to questions as to the admissibility of evidence made upon the trial,

BROWN, &c.
vs.
ALDEN, &c.

10. A separate estate in the wife, however absolute, does not exclude the rights of the surviving husband, but if, by the conveyance, an interest is given to the wife, which may endure beyond her death, the rights of the surviving husband attach to such interest just as if there had been no separate estate, unless it has been disposed of by the wife, or by the conveyance which created the separate estate; when the wife dies the cause for excluding the husband ceases."

11. Since the act of 1846 a surviving husband is only entitled to a life estate in the slaves of the wife, and that whether there be issue of the marriage or not.

and the decision, as above quoted, must be regarded as a judicial authority.

The cases taken together establish, as we think, conclusively, the principle that a separate estate in the wife, however absolute, does not exclude the rights of the surviving husband, but that if by the conveyance an interest is given to the wife which may endure beyond her death, the rights of the surviving husband attach to such interest just as if there had been no separate estate, unless it has been disposed of by the wife or by the conveyance which created the separate estate. When the wife dies the cause for excluding the rights of the husband ceases, and as said by Chancellor Kent, the court cannot, by construction, extend the settlement beyond the just and fair import of its provisions, to exclude the husband's rights.

Then under these deeds there is no separate estate, and no exclusion of the marital rights after the death of the wife. There is no separate estate secured to or intended for her heirs. As to them the deeds have the same effect as if they conveyed the property in trust for the use and benefit of Mrs. Alden, her heirs, &c., leaving out the word "sole;" and as such a conveyance would have vested no interest in her heirs or next of kin, so we think the conveyance as it stands, vests no interest in them, but leaves the property which belonged to her at her death to the disposition of the law, which gives the personalty, including furniture and money or notes to the husband, as survivor or as administrator. The only discrimination to be made with regard to the slave is, that under the act of 1845-6, for protecting the rights of married women, his interest which before that act was absolute, is reduced to an estate for his life, to which he is entitled whether there was issue of the marriage or not.

Whereupon, the decree is affirmed.

BODLEY & BALLARD for appellants; SPEED, WORTHINGTON, and TYLER for appellees.